UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| SAM BRADFORD WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:16-00112 |
| ) | Judge Crenshaw/Brown |
| NANCY BERRYHILL, ACTING ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge.**

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration (SSA) through its Commissioner denying plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423(d), and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 17) be **GRANTED** and the Commissioner's decision **REMANDED** for the ALJ to conduct a proper analysis of the medical source statement completed by treating physician, Dr. James Roth, M.D.

### I. PROCEDURAL HISTORY[1]

Plaintiff filed applications for DIB and SSI on June 18, 2013, alleging a disability onset date of April 16, 2013 in both instances. Plaintiff alleged disability due to back and left shoulder pain,

---

[1] The procedural history below is adopted from the jurisdiction and procedural history section of the ALJ's decision (Doc. 10, p. 14), unless otherwise indicated. References to page numbers in the administrative record are to the page numbers that appear in bold in the lower right corner of each page.

hepatitis C, Shingles, cirrhosis of the liver, sleep apnea, cold sweats, fatigue, hypertension, and depression. (Doc. 10, pp. 127, 132, 200) Both claims were denied initially on December 16, 2013, and upon reconsideration on April 10, 2014.

Plaintiff requested a hearing before an ALJ on July 7, 2014. A hearing was held before ALJ George Evans on October 1, 2015. Plaintiff was represented at the hearing by attorney Donna Simpson. Vocational expert (VE) Ann Thomas testified at the hearing.

The ALJ entered an unfavorable decision on November 6, 2015 (Doc. 10, pp. 11-28), after which plaintiff filed a request with the Appeals Council on December 8, 2015 to review the ALJ's decision (Doc. 10, p. 10). The Appeals Council denied plaintiff's request on October 18, 2016. (Doc. 10, pp. 1-6)

Plaintiff brought this action through counsel on December 20, 2016 (Doc. 1), following which he filed a motion for judgment on the administrative record on June 16, 2017 (Doc. 17). The Commissioner responded in opposition July 13, 2017. (Doc. 19) Plaintiff did not reply. This matter is now properly before the court.

## II. EVIDENCE[2]

Dr. Roth's records are before the court for the period July 25, 2013 to May 7, 2014. (Doc. 10, pp. 417-76, 586-89) Among those records are Dr. Roth's referral of plaintiff to the Cookville Regional Medical Center on July 10, 2013 for imaging for mid-back pain, neck pain, and osteoporosis. (Doc. 10, p. 388)

DEXA (Dual-Energy X-ray absorptiometry) imaging for osteoporosis was performed on July 10, 2013 and included the lumbar spine, left femoral neck, and total left hip. (Doc. 10, pp. 389-90,

---

[2] The medical evidence of record is discussed below to the extent that it is relevant to plaintiff's claims of error. The remainder of the medical evidence of record and the proceedings at the hearing are incorporated herein by reference.

2

431-32)  The impression in the DEXA report was that the results "f[e]ll within the osteopenic range."  (Doc. 10, pp. 389, 432)

The impressions reported in the July 10, 2013 MRI of the thoracic spine (Doc. 10, pp. 394-95, 449-50) were as follows:

> Scoliosis as described with multilevel disc degeneration and mild to moderate spondylosis.
>
> No acute compression fractures or bone destruction.
>
> Right paracentral disc/spur complex noted at the T5-6 level approximating the cord with no compression.  Minimal spur noted left paracentral in location at the T4-5 level with no cord impingement.
>
> Small right paracentral disc protrusion at the T6-7 level with no cord impingement or significant canal stenosis.

(Doc. 10, pp. 395, 450)

The impressions in the July 10, 2013 MI of plaintiff's cervical spine (Doc. 10, pp. 391-93, 446-47) were as follows:

> Moderate disc degeneration with moderate spondylosis at the C5-6 and C6-7 level.  Posterior marginal spurs at both of these levels causes mild canal stenosis with bilateral lateral recess and foraminal stenosis . . . .  There is no cord impingement. . . .

(Doc. 10, pp. 392, 447)

Dr. Roth completed a medical source statement on May 7, 2014 of plaintiff's physical ability to perform work related activities.  (Doc. 10, pp. 586-89)  Dr. Roth restricted plaintiff to less than sedentary work.  More particularly, Dr. Roth opined that plaintiff: 1) was limited to lifting and carrying less than 10 lbs.; 2) was limited to standing and walking to less than 2 hrs.; 3) could sit about 4 hrs.; 4) was limited in his ability to push and pull in both upper and lower extremities; 5) had to have the ability to sit and stand to relieve pain and discomfort.  (Doc. 10, pp. 586-87)  Dr.

3

Roth based the foregoing limitations on cervical radiculopathy (disease of the nerve roots), lumbar degenerative disc disease, cervical degenerative disc disease, thoracic degeneration, herniated nucleus pulposus (herniated disc), lumbar radiculitis (inflammation of the spinal nerve root), and cervical spinal stenosis. (Doc. 10, p. 587)

Dr. Roth further opined that: 1) plaintiff's pain would interfere with his attention and concentration constantly; 2) he was capable of only low stress jobs; 8) he required a 15 min. break every hour; 3) prolonged sitting would require that he elevate his legs; 9) his impairments would produce "good days" and "bad days"; 4) he likely would miss work more than four times per month. (Doc. 10, p. 587) Dr. Roth opined further that plaintiff could "never" climb, balance, kneel, crouch, or crawl, and that he would be limited constantly in his ability to reach, handle, finger, and feel. (Doc. 10, p. 588) Dr. Roth based these limitations on plaintiff's alleged severe pain, weakness, and numbness. (Doc. 10, p. 588)

Dr. Roth also opined that plaintiff had no noise restrictions, but that he should avoid concentrated exposure to perfumes, solvents and cleaners, and cigarette smoke, and that he should avoid all exposure whatsoever to extreme cold, extreme heat, dust, vibration, humidity and wetness, hazards such as machinery and heights, fumes odors, dusts, and gasses, soldering fluxes, and chemicals. (Doc. 10, p. 589) Dr. Roth attributed plaintiff's environmental limitations to "severe" shortness of breath and chronic obstructive pulmonary disease. (Doc. 10, p. 589)

### III. ANALYSIS

#### A. The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if he can show his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

4

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2014). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

### B. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374. Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion. *Gayheart*, 710 F.3d at 374.

### C. Claims of Error

Plaintiff asserts three claims of error, the first of which is that the ALJ erred in not giving Dr. Roth's medical source statement controlling weight. (Doc. 18, pp. 11-15) Plaintiff argues that Dr. Roth was a treating physician under the regulations and, as such, the medical source statement that he completed was entitled to controlling weight. The record support's plaintiff's assertion that Dr. Roth was a treating source under the regulations.

Under the standard commonly called the "treating physician rule," the ALJ is required to

5

give a treating source's opinion "controlling weight" if two conditions are met: the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. §§ 404.1527(c)(2)-(6)).

The ALJ is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188 at *5 (SSA)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson v. Comm's of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

The ALJ addressed Dr. Roth's medical source statement in his decision, writing the following in relevant part:

> James Roth, M.D., completed a medical source statement in May 2014 . . . . **Dr. Roth's opinion is given little weight, as it is inconsistent with the overall evidence of record, including treatment notes, examination findings and objective diagnostic test results.** Additionally, it seems to be based on some misinformation. Dr. Roth indicated that the claimant had a herniated nucleus pulposus [bulging disc], but none of the MRI studies of the claimant's cervical, thoracic and lumbar spine has shown any such

6

> abnormality. Dr. Roth indicated that the claimant needed to elevate his legs with prolonged sitting, but the record shows that the claimant only complained of lower extremity edema on one occasion, and none of the claimant's treating or examining physicians has noted any significant edema.

(Doc. 10, pp. 21-22)(bold added)

The Sixth Circuit provided the following explanation for the good-reason requirement of the treating physician rule:

> The failure to provide 'good reasons' for not giving [a treating source's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of [20 C.F.R. § 404.1527(c)(2)]. For example, the conclusion that [a treating source's] opinions 'are not well-supported by [the] objective findings' is ambiguous. One cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques . . . .) or that the findings are sufficiently objective but do not support the content of the opinions.

*Gayheart*, 710 F.3d at 377.

The text in bold in the ALJ's decision quoted on the preceding page does not constitute a "good reason" under the *Gayheart* standard above. The objective medical evidence of record is considerable. Without more, the text in bold does not permit meaningful review of the ALJ's reasoning. Assuming for the sake of argument that the ALJ's reference to herniated nucleus pulposus (herniated disc) and edema were intended to explain his decision to give Dr. Roth's opinion"little weight," those statements are not supported by the record. First, the bulging disc and edema statements refer to an infinitesimally small fraction of the total medical evidence of record. To permit those meniscal issues to trump the totality of the other medical evidence of record gives disproportionate weight to those issues. Second, reliance on those issues to give little weight to Dr. Roth's opinion also is not supported by the record. First, as plaintiff argues (Doc. 18, p. 15), and

7

the Commissioner concedes (Doc. 19, p. 9), the July 2013 MRI of plaintiff's thoracic spine did, in fact, reveal a "small shallow right paracentral disc protrusion [bulging disc] at the T6-7 level with mild canal encroachment and no cord impingement" (Doc. 10, pp. 330, 513). In short, the ALJ misread the MRI. Second, although Dr. Roth noted in his medical source statement that plaintiff "should" elevate his legs, Dr. Roth did not cite edema as the reason for that opinion. Linking Dr. Roth's opinion to a one-time reference to edema was an unwarranted assumption on ALJ's part.

For the reasons explained above, the ALJ did not give a good reason for giving Dr. Roth's medical source statement "little weight," therefore it is unnecessary to assess whether the ALJ's reason was supported by substantial evidence. Consequently, this action should be remanded for the ALJ to provide proper analysis of Dr. Roth's medical source statement under the treating physician rule. Inasmuch as plaintiff's first claim of error is dispositive, it is not necessary to address his remaining two claims of error.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 17) be **GRANTED** and the Commissioner's decision be **REMANDED** for the ALJ to conduct a proper analysis of the medical source statement completed by Dr. Roth. The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 149, 155, *reh'g denied*, 474 U.S. 111 (1986); *see Berry v. Warden, Southern Ohio Correctional Facility*,

872 F.3d 329, 335 (6th Cir. 2017).

        **ENTERED** this 25th day of January, 2018.

                                    /s/ Joe B. Brown  
                                    Joe B. Brown  
                                    United States Magistrate Judge